UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**
July 25, 2019
David J. Bradley, Clerk

Eugene Ethridge, Sr., et al., §
§
　　　　Plaintiffs, §
§
versus § Civil Action H-17-2815
§
Fort Bend County, et al., §
§
　　　　Defendants. §

## Opinion on Summary Judgment

1. *Background.*

　　Late in the evening on November 1, 2015, Eugene Ethridge, Jr., was arrested for driving while intoxicated while two of his minor children were in his truck. The minors were placed with their mother, Ashley Yates. The truck was towed. Upon being arrested, Ethridge was first taken to Fort Bend County Jail, then taken to Oakbend Medical Center where blood and other fluids were drawn for the criminal case. He was returned to the jail, completed an initial medical screening, and was placed in the detoxification unit. After detox released him, he completed a suicide screening form. He denied having (a) suicidal thoughts, at that time or ever, (b) depression, and (c) ever attempted suicide. Ethridge was not fitted in a suicide smock nor placed in a padded cell. He was assigned a general population, one-man cell (4G-17), and given standard clothing.

　　During the overnight shift of November 2-3, Officer Brandon Satchell was assigned to the 4G and 4H cell units, housing Ethridge. His shift was from ten p.m. until six a.m. Satchell was then replaced by Deputy Darren Patton for the next shift. According to jail practice, jailers are to make face-to-face rounds every sixty minutes. Satchell admits to skipping one of his face-to-face rounds and falsifying his rounds sheet.

　　On November 3, Ethridge did not leave his cell for breakfast. A little before six a.m., the shift changed. Deputy Patton made his rounds and he discovered Ethridge's body dangling from his bed sheet that he had tied to a shelf.

Ethridge was pronounced dead shortly after being freed from the sheet. He had committed suicide. Officer Satchell was fired.

2.  *The Lawsuit.*

The plaintiffs are Eugene Ethridge, Sr., father of the decedent; Tyler Broussard, adult son of the decedent; Ashley Yates, fiancé and mother of two of the decedent's children; and Debbie Alexander, mother of two of the decedent's children. Not one of these plaintiffs was present when Ethridge wrecked his truck, was arrested, was transported to the medical center or to jail. Not one has direct personal knowledge of the suicidal ideations of Ethridge, that night or ever. No affidavit or record about his mental condition has been offered. No one has personal knowledge of anything that happened in the cell that early morning of November 3. The defendants are Sheriff Troy Nehls (who was not present at the jail during the incident), Brandon Satchell, and Fort Bend County, Texas.

3.  *The Form.*

In October 2015, the Texas Commission on Jail Standards sent Fort Bend County an At-Risk letter. That responded to an earlier inmate suicide. The letter said that *"the failure to observe the inmate within thirty minutes occurred prior to his death and did not contribute to his death in any manner."* The Commission mandated Fort Bend – and all other county jails in Texas – to use its revised intake screening form by December 1, 2015. The old form was used during Ethridge's November intake. The old form had five questions on depression and suicide, and the new form has five questions on depression and suicide. Despite these questions, Ethridge denied being depressed or suicidal, marking *no* to each question.

4.  *The Buzzer.*

Each jail cell has an intercom button for an inmate to press at any time. The jailer on duty can hear and respond to the call. Jailers respond to the button use by inmates without knowing the need, whether urgent or not. It is unclear whether Ethridge used his button during the overnight shift from November 2 to 3. No verifiable evidence shows if Ethridge did in fact use it.

Three affidavits – from fellow inmates – show agreement that an intercom button was pushed. Inmate One recalls that *all*[1] of the inmates heard the buzzing and started shouting. It went on, he insists, for about 20 minutes. He looked for an officer from inside his cell, but he did not see one in the picket, nor one doing rounds.

Inmate Two shares Inmate One's experience. However, from his cell location, he was able to see inside of Ethridge's cell. He claims to have seen Ethridge himself pressing the button and yelling for an officer's assistance.

Inmate Three echoes the statements of the other two. He woke up to the button being pressed. From his cell location, he insists that he also saw Ethridge himself pressing the button, heard others yelling, and saw no officer around.

In direct contradiction with these inmate statements, are affidavits from Satchell and five other officers. Satchell answered other non-emergency calls during his shift, but he denies any calls from Ethridge. Satchell also asserts that had a call gone unanswered in the manner claimed, his supervising officer would have heard the calls and intervened. The inmates do not account for the supervisor not being alerted to the claimed ruckus.

Whether Ethridge pressed his intercom button is unknowable. If Ethridge did press the intercom, we can only speculate as to the reason behind the call.

5.  *The Abandoned Post.*

It remains unclear whether Satchell left the post during his overnight shift or not. No evidence shows that he did leave. Eugene Ethridge, Sr., Ashley Yates, Tyler Broussard, and Debbie Alexander pleaded that there was a two-hour period in which no officer was present. Officer Satchell is adamant that he did not abandon his post nor the inmates under his custody during his shift. Not seeing Satchell does not equal his not being there.

---

[1] From Inmate One's cell location, he could not have seen all of the inmates shouting or known if all of the inmates heard the buzzer. It would have also been impossible for him to have seen inside of Ethridge's cell.

6. *Deprivation of Rights.*

The elements of a civil action for deprivation of rights[2] are that (a) every person who, (b) under color of a state law, (c) subjects, (d) a citizen of the United States, (e) to be deprived of rights secured by the Constitution, (f) shall be liable to the injured person.

The two requirements for a civil action for deprivation of rights would be that (a) Ethridge's federal constitutional or statutory rights were violated, and (b) the violation was committed by a person acting under the color of state law.

A. *Violation.*

Pre-trial detainees are allowed certain protections under the Constitution. The failure to supply pre-trial detainees with adequate protection from their *known* suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights. Because detainees are limited in their ability to care for themselves, adequate protection is synonymous with their basic human needs. These needs are derived from the Eighth Amendment[3], such as medical care, food and safety. Ethridge was afforded each of his basic human needs. The protection was adequate. No violation.

B. *Knowledge.*

Fort Bend County jail staff could not have known of Ethridge's suicidal impulses. Ethridge denied them. If he developed them after initial intake or if he lied on the form, he did not alert anyone to this development. Because no jail official knew of Ethridge's suicidal state, the possibility of knowledge is eliminated.

C. *Deliberate Indifference.*

An official acts with deliberate indifference if (a) he knows that an inmate faces a substantial risk of serious bodily harm and (b) he disregards that risk by failing to take reasonable measures to abate it.

---

[2] 42 U.S.C. § 1983.

[3] Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. (emphasis added) U.S. Const. amend. VIII.

Deliberate indifference could be shown if evidence was submitted that officials refused to treat Ethridge, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs.

Officer Satchell made a negligent mistake: he did not make a face-to-face observation of all inmates within the hour requirement. This mistake had consequences. However, the mistake was not premeditated nor intentional, and he had no idea of the gravity of what followed. A lapse in judgment does not convert to deliberate indifference. For all that Satchell, Fort Bend County, and Sheriff Nehls knew, Ethridge was an ordinary inmate —not a high risk one. They did not know Ethridge was likely to have a self-destructive episode. All that the officers, the staff on duty, the deputies, and the sheriffs knew was the information that Ethridge gave them at intake.

7. Conclusion.

Fort Bend County played no role in causing, aiding, or knowingly allowing Ethridge to commit suicide. They did not violate his federal constitutional rights. Eugene Ethridge, Sr., Ashley Yates, Tyler Broussard, and Debbie Alexander will recover nothing from Fort Bend County, Brandon Satchell, and Sheriff Troy Nehls.

Signed on July 25, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge